734 S.E.2d 314

**The STATE, Respondent,**

v.

**Christopher MANNING, Appellant.**

**Appellate Case No. 2010–161686.**

**No. 5017.**

Court of Appeals of South Carolina.

Heard May 8, 2012.

Decided Aug. 1, 2012.

Withdrawn, Substituted and Refiled Oct. 10, 2012.

260

Appellate Defender LaNelle C. DuRant, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General David A. Spencer, all of Columbia; and Solicitor Donald Myers, of Lexington, for Respondent.

WILLIAMS, J.

In this appeal, Christopher Manning (Manning) asserts the circuit court erred by (1) denying Manning's motion to dismiss the case because the State violated section 56–5–2953 of the South Carolina Code (Supp. 2011) by failing to provide an affidavit of the arresting officer certifying that it was physically impossible to provide a video recording as required by the statute when Manning needed emergency medical treatment; (2) denying Manning's motion to suppress the blood test evidence pursuant to section 56–5–2946 of the South Carolina Code (1991) because there was not sufficient probable cause for an arrest; (3) denying Manning's motion for a mistrial based on prejudice suffered by Manning after the circuit court severed the felony DUI charge and the possession of a schedule three substance charge after the jury was aware Manning

was being tried on both charges; and (4) charging the jury on section 56–5–2950(b) of the South Carolina Code (Supp. 2011). We affirm.

## FACTS

On July 31, 2009, Manning was working at Boondocks, a private club. Jacob Hill (Hill) was working at a nearby restaurant, Fisherman's Wharf. Hill needed a ride home from work, so he walked to Boondocks where he knew people because he had previously worked there. When he arrived at Boondocks, Hill started drinking with friends.

After Manning's shift at Boondocks was over at 11:00 pm, he began drinking with Hill and his friends until around 4:00 am. Heather Fairchild (Fairchild), one of the bartenders at Boondocks that night, testified that although Manning and Hill consumed a "pretty good amount of alcohol" by drinking beer and taking shots together, neither appeared to be visibly drunk. When Boondocks closed, Fairchild testified she heard Manning and Hill talk about going swimming in Lake Murray and also heard Manning say he had his car and he was going to drive.

Manning and Hill were subsequently in a single car accident, severely injuring Manning and killing Hill. Manning was arrested and indicted for felony DUI and possession of a quantity of acetaminophen and hydrocodone, a schedule three substance. During the two-day jury trial, the State argued Manning was the driver. Manning's defense at trial was that Hill was the driver of the vehicle.

Nathan Prouse (Prouse), an employee of the Lexington County Fire Service, testified he received a call shortly before 5:00 am about a vehicle accident on Highway 378. He was the first responder on the scene. When Prouse arrived, he saw two bodies lying on the ground in a field. EMS arrived immediately after Prouse and pronounced Hill deceased. Prouse went to assist Manning, who was severely injured. Prouse testified Manning appeared alert and told Prouse, "I f-ed up!" Other emergency responders testified they heard Manning say those same words. Elizabeth Grayson Simmons (Simmons), of Lexington County EMS, testified the first thing she noticed was a strong smell of alcohol as she approached Manning. Simmons testified Manning's nose was split, and he

had a wound as big as a fist in his abdomen exposing his intestines. Simmons testified she heard Manning state, "I f-ed up. I should have never done this. Look what I've done." Firefighter Victor Tomaino (Tomaino), who assisted in Manning's care, testified he heard Manning repeatedly say, "I f-ed up" and "I should not have been driving."

Corporal Quest Hallman (Corporal Hallman) was the first police officer to arrive at the scene, but Manning had already been transported to the hospital. Corporal Hallman conducted an investigation of the scene to determine the identity of the driver. Corporal Hallman ultimately concluded that Manning was the driver and directed Trooper Jeffrey B. Baker (Trooper Baker) to retrieve a blood sample from Manning at the hospital. In explaining his request for the blood sample, Corporal Hallman testified, "In my experience and my determination, I determined [Manning] was the driver of the vehicle. And with there being a death involved, a legal blood sample was drawn."

Forensic toxicologist, Jennifer Brown (Brown), testified that Manning's blood alcohol level was .173, and Hill's blood alcohol level was .169 at the time of the accident. Brown also testified this level of intoxication would slow an individual's reaction time, impair his or her vision, and adversely affect his or her judgment.

Corporal James O'Donnell (O'Donnell) testified he worked for the South Carolina Highway Department Patrol with the Multidisciplinary Accident Investigation Team (MAIT). The State qualified O'Donnell as an expert in the field of accident reconstruction. O'Donnell further testified that in his opinion, the vehicle was going 89 miles per hour at the time of the accident. He opined that the vehicle went into a curve, went off the shoulder of the road, overturned multiple times, struck a tree, and flew across a ditch where it landed. O'Donnell estimated the vehicle travelled a total of 535 feet during the accident. O'Donnell noted the accident was so violent that the engine was dislodged from the engine compartment. Hill was found lying approximately fifty feet from the vehicle, and Manning was found approximately fifteen feet from the vehicle. O'Donnell testified there was no forensic evidence identifying the driver, and no witnesses. O'Donnell did note, how-

ever, that a driver has more obstacles than a passenger would to keep from being ejected, and that the steering wheel in this case could have caused Manning's abdominal injuries.

Prior to trial, the circuit court severed the felony DUI charge and the schedule three drug charge, and the jury found Manning guilty of felony DUI. The circuit court sentenced Manning to eighteen years' imprisonment and a $10,000 fine. Manning appeals.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate court is bound by the circuit court's factual findings unless they are clearly erroneous. *Id.*

## LAW/ANALYSIS

### I. Section 56–5–2953

Manning argues the circuit court erred in denying his motion to dismiss because the arresting officer did not provide an affidavit in compliance with section 56–5–2953. We disagree.

Section 56–5–2953(A) provides that a person who operates a vehicle while under the influence of alcohol "*must* have his conduct at the incident site and the breath test site video recorded." (emphasis added).

Subsection B of 56–5–2953 outlines four exceptions that excuse noncompliance with subsection A's mandatory video recording requirement. Failure to comply with the video recording requirement is excused: (1) if the arresting officer submits a sworn affidavit certifying the video equipment was inoperable despite efforts to maintain it; (2) if the arresting officer submits a sworn affidavit that it was impossible to produce the video recording because either (a) the defendant needed emergency medical treatment or (b) exigent circumstances existed; (3) in circumstances including, but not limited to, road blocks, traffic accident investigations, and citizen's arrests; or (4) for any other valid reason for the failure to produce the video recording based upon the totality of the circumstances. § 565–2953(B); *see also Town of Mt. Pleasant*

*v. Roberts,* 393 S.C. 332, 346, 713 S.E.2d 278, 285 (2011) (explaining a previous version of subsection B that is nearly identical to the current version).

Manning relies on *City of Rock Hill v. Suchenski,* 374 S.C. 12, 646 S.E.2d 879 (2007), to argue the circuit court erred in failing to dismiss Manning's charges. In *Suchenski,* our supreme court affirmed the dismissal of the defendant's charges for driving with an unlawful alcohol concentration due to the failure of the arresting officer to record a third field sobriety test because he unintentionally ran out of videotape. 374 S.C. at 14–16, 646 S.E.2d at 879–80. However, in that case, our supreme court found the lower court only considered subsection A of 56–5–2953, and not the exceptions to the videotaping requirement in subsection B of 56–5–2953. *Id.* at 15–16, 646 S.E.2d at 880. Therefore, the *Suchenski* court found any issue dealing with the exceptions outlined in subsection B of 56–5–2953 was not preserved for review. *Id.*

Here, the circuit court found there was no conduct to record under subsection A of section 56–5–2953 because the police arrived after Manning left the scene to seek medical treatment. The circuit court held subsection A of 56–5–2953 was inapplicable because Corporal Hallman and Manning were never simultaneously present at the incident site; therefore, there was nothing to record. Moreover, the circuit court held that even if Corporal Hallman had a duty to record or sign a sworn affidavit certifying that it was physically impossible to produce the video recording because Manning needed emergency medical treatment, section 56–5–2953 allows a circuit court to look at the totality of the circumstances and make a determination of whether the charges should be dismissed.

We find section 56–5–2953 was implicated by the facts of this case. Although the officers did not arrive to the incident site before Manning was sent to the hospital, the first sentence of subsection A plainly states that "[a] person who violates Section 56–5–2930, 56–5–2933, or 56–5–2945 must have his conduct at the incident site ... video recorded." § 56–5–2053(A). The important question here is whether the State satisfied an exception to the video recording requirement outlined in subsection B. § 56–5–2053(B).

We also find the circuit court properly refused to dismiss Manning's charges under subsection B. In this case, it was physically impossible for Corporal Hallman to produce a video recording of Manning at the incident scene because Manning had been transported from the scene for medical treatment prior to Corporal Hallman's arrival. Because the State did not submit an affidavit signed by the arresting officer and stating Manning was transported for medical treatment, Manning's charges should have been dismissed unless another exception under subsection B applied. *See* § 56–5–2953(B) ("Failure by the arresting officer to produce the video recording required by this section is not alone a ground for dismissal ... if the arresting officer ... submits a sworn affidavit certifying that it was physically impossible to produce the video recording because the person needed emergency medical treatment....").

Despite the failure to provide an affidavit under subsection B, the video recording was not required because Corporal Hallman was conducting an investigation of a traffic accident and Manning was arrested at the hospital. *See* § 56–5–2953(B) ("In circumstances including, but not limited to, ... traffic accident investigations ..., where an arrest has been made and the video recording equipment has not been activated by blue lights, the failure by the arresting officer to produce the video recordings required by this section is not alone a ground for dismissal."). Moreover, even if the traffic accident investigation exception was inapplicable, the circuit court properly concluded the video recording was not required due to the totality of the circumstances because Manning and Corporal Hallman were never at the incident scene at the same time. *See* § 56–5–2953(B) ("Nothing in this section prohibits the court from considering any other valid reason for the failure to produce the video recording based on the totality of the circumstances....").

Accordingly, we find the circuit court properly held section 56–5–2953 did not require the dismissal of Manning's charges.

## II. Section 56–5–2946

Manning also argues the circuit court erred in denying his motion to suppress the blood test evidence pursuant to section

56–5–2946 because there was not sufficient probable cause for an arrest. We disagree.

Section 56–5–2946 provides, in pertinent part:

Notwithstanding any other provision of law, a person must submit to either one or a combination of chemical tests of his breath, blood, or urine for the purpose of determining the presence of alcohol, drugs, or a combination of alcohol and drugs if there is probable cause to believe that the person violated [the law by driving under the influence] or is under arrest for [driving under the influence]. The tests must be administered at the direction of a law enforcement officer who has probable cause to believe that the person violated or is under arrest for a violation of § 56–5–2945 [offense of felony driving under the influence].

Probable cause to arrest without a warrant exists when the "circumstances within the arresting officer's knowledge are sufficient for a reasonable person to believe a crime has been committed by the person to be arrested." *State v. Cuevas*, 365 S.C. 198, 203, 616 S.E.2d 718, 721 (Ct.App.2005). "In determining whether probable cause exists, 'all the evidence within the arresting officer's knowledge may be considered, including the details observed while responding to information received.'" *Id.* at 204, 616 S.E.2d at 721 (citing *State v. Roper*, 274 S.C. 14, 17, 260 S.E.2d 705, 706 (1979)). "Probable cause turns not on the individual's actual guilt or innocence, but on whether facts within the officer's knowledge would lead a reasonable person to believe the individual arrested was guilty of a crime." *Jackson v. City of Abbeville*, 366 S.C. 662, 666, 623 S.E.2d 656, 658 (Ct.App.2005).

This court reviews the circuit court's probable cause determination under a "clear error" standard. *Baccus*, 367 S.C. at 48–49, 625 S.E.2d at 220. The finding that an arrest was made based upon probable cause is conclusive on appeal where supported by evidence. *State v. Jones*, 268 S.C. 227, 233, 233 S.E.2d 287, 289 (1977).

Here, the circuit court found that both Corporal Hallman and Trooper Baker had probable cause to arrest Manning for felony DUI. We agree.

■ Under our standard of review, we find a reasonable person with Corporal Hallman's knowledge would have probable cause to arrest Manning for felony DUI. The accident occurred at 5 am and was so violent that the car drifted off the road over 500 feet. Corporal Hallman testified he smelled alcohol in and around the vehicle, and saw a beer bottle in the accident debris. Corporal Hallman also testified he knew the address on the vehicle's registration matched Manning's Department of Motor Vehicle (DMV) record. Most importantly, Corporal Hallman testified he believed Manning to be the driver because Trooper Baker called him and told him Manning stated he was the driver. We find further support for a finding of probable cause based on Corporal Hallman's testimony he arrested Manning for felony DUI after speaking with fire service personnel and EMS at the scene, who were present with Manning shortly after the accident.

■ Second, if Trooper Baker was deemed to be the arresting officer, we find there is evidence to support Trooper Baker had probable cause to arrest Manning for felony DUI based on a statement made to him by a Highway Patrol officer indicating Manning was the driver, his observations at the hospital that Manning smelled of alcohol, and his observations that Manning sustained trauma consistent with having been in an accident. Accordingly, because the circuit court's finding that Corporal Hallman and Trooper Baker both had probable cause to arrest Manning is supported by the evidence in the record, we find no clear error. *See State v. Barrs*, 257 S.C. 193, 198, 184 S.E.2d 708, 710 (1971) (holding because there was evidence to support the circuit court's finding that officer had probable cause to make an arrest, it is conclusive on appeal).

### III. Severance of charges

■ Manning argued the circuit court erred in denying his motion for a mistrial after the circuit court severed the felony DUI charge and the possession of a schedule three substance charge because the potential jurors were told at the beginning of the trial that Manning was being tried for both charges, and both indictments were read.

In this case, Manning was indicted for two charges: felony DUI and possession of a schedule three substance. At the beginning of jury selection, the circuit court read both indictments to the prospective jurors. After jury selection was complete and the jury was qualified, Manning moved to sever the charges, arguing because he had no hydrocodone in his system at the time of the accident, it would be highly prejudicial under Rule 403 of the South Carolina Rules of Evidence for the jury to consider his possession of that substance in determining whether he was guilty of felony DUI. Manning asserted, "the natural assumption of the jury will be that [the possession of the schedule three substance] is something that deals with the felony DUI."

During the pre-trial hearing, after the State confirmed the schedule three substance did not appear in Manning's blood stream, the circuit court severed the charges. Manning moved for a mistrial, arguing the jurors would still speculate about the severed drug charge because they heard both indictments read at the beginning of jury selection. The circuit court denied Manning's motion stating:

> You didn't make that motion before the jury was qualified, and the Court is not going to be trapped [into a mistrial] like that. I'll be glad to give whatever instruction you want me to give [to the jury], but the case was called for trial in front of the Court. It was qualified. There were no motions at that time, except the one y'all brought to me in chambers on the continuance. So if it prejudices [Manning], that's a self-inflicted wound. That's not a wound inflicted by the State or this Court.

Manning declined the circuit court's offer to give an instruction to the jury to disregard the severed drug charge.

We find Manning waived this issue on appeal by failing to timely object to presenting both indictments to the prospective jurors. Manning did not contemporaneously object to reading both indictments to prospective jurors and did not move to sever the charges until after the jury selection process was complete and the jury was qualified. *See Scott v. Porter,* 340 S.C. 158, 167, 530 S.E.2d 389, 393 (Ct.App.2000) ("[I]n order to be timely, an objection usually must be made at the earliest possible opportunity."); *cf. State v. Lynn,* 277 S.C. 222, 226,

284 S.E.2d 786, 789 (1981) (holding that the failure to contemporaneously object to prejudicial testimony "cannot be later bootstrapped by a motion for a mistrial"). Moreover, on the merits, we find the circuit court did not abuse its discretion in denying Manning's motion for a mistrial.

The decision to grant or deny a mistrial is within the sound discretion of the circuit court. *State v. Stanley*, 365 S.C. 24, 33, 615 S.E.2d 455, 460 (Ct.App.2005). The circuit court's decision will not be overturned on appeal absent an abuse of discretion amounting to an error of law. *Id.; State v. Rowlands*, 343 S.C. 454, 458, 539 S.E.2d 717, 719 (Ct.App. 2000). "Granting a mistrial is a serious and extreme measure which should only be taken when the prejudice can be removed no other way." *State v. Moore*, 377 S.C. 299, 311–13, 659 S.E.2d 256, 263 (Ct.App.2008). A mistrial should only be granted when "absolutely necessary," and a defendant must show both error and resulting prejudice in order to be entitled to a mistrial. *Stanley*, 365 S.C. at 34, 615 S.E.2d at 460.

We find the single reference to the schedule three drug charge contained in the indictments read at the beginning of trial does not constitute sufficient prejudice to justify a mistrial. *See State v. Thompson*, 352 S.C. 552, 561, 575 S.E.2d 77, 82 (Ct.App.2003) ("[A] vague reference to a defendant's prior [crimes] is not sufficient to justify a mistrial where there is no attempt by the State to introduce evidence that the accused has been convicted of other crimes."). Ample evidence in the record supports Manning's conviction for felony DUI, and there is no evidence the jury considered the severed drug charge in reaching its verdict. Therefore, we affirm the circuit court's decision to deny Manning's motion for a mistrial.

### IV. Section 56–5–2950(b)

Manning argues the circuit court erred in charging the jury on section 56–5–2950(A) because the statute begins with "a person who drives" which is a statement on the facts and the identification of the driver was the primary issue at trial. We disagree.

Generally, the circuit court is required to charge only the current and correct law of South Carolina. *Sheppard*

*v. State*, 357 S.C. 646, 665, 594 S.E.2d 462, 472 (2004); *State v. Brown*, 362 S.C. 258, 261, 607 S.E.2d 93, 95 (Ct.App.2004). The law to be charged to the jury is determined by the evidence presented at trial. *Brown*, 362 S.C. at 261–62, 607 S.E.2d at 95. "Jury instructions should be considered as a whole, and if as a whole they are free from error, any isolated portions which may be misleading do not constitute reversible error." *State v. Aleksey*, 343 S.C. 20, 27, 538 S.E.2d 248, 251 (2000). An appellate court will not reverse a circuit court's decision regarding jury instructions absent an abuse of discretion. *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000).

Section 56–5–2950(A) provides, in pertinent part:

A person who drives a motor vehicle in this State is considered to have given consent to chemical tests of his breath, blood, or urine for the purpose of determining the presence of alcohol or drugs, or the combination of alcohol and drugs if arrested for an offense arising out of acts alleged to have been committed while the person was driving a motor vehicle while under the influence of alcohol or drugs or a combination of alcohol and drugs.

Here, the circuit court charged the jury, in pertinent part:

Felony DUI requires proof of three elements: Number one, the actor drives a vehicle under the influence of alcohol and/or drugs; number two, the actor does an act forbidden by law or neglected a duty imposed by law; and number three, the act or negligence, the act of neglect, proximately cause the death to another person . . . . In every case before a jury, the jury becomes the sole and exclusive judge of the facts in a case. A [circuit] judge cannot intimate, state, comment on or make any statement to a jury about the facts in the case. Since you the jury are the sole judge of the facts, you are not to infer from what I have said during the progress of this trial . . . or anything that I say now during the course of this instruction to you that I have any opinion about the facts in the case. . . . An issue in this case is the identification of the Defendant as the person who committed the crime charged. The State has the burden of proving the identity beyond a reasonable doubt. You the jury must be satisfied beyond a reasonable doubt of the accuracy of the identification of the Defendant before you convict the Defendant.

The circuit court subsequently charged the jury with section 56–5–2950(A), reading the statute in its entirety.

Viewing the jury instruction as a whole, we find the circuit court did not abuse its discretion in charging the jury on section 56–5–2950(A). Prior to charging the jury on section 56–5–2950(A), the circuit court made clear it was not making any statements related to the facts, but rather the jury in its absolute discretion must decide beyond a reasonable doubt if Manning was the driver of the vehicle. It is unlikely that a reasonable juror would have singled out the phrase "a person who drives" and interpreted it as the circuit court's opinion on the facts of the case. *See State v. Jackson*, 297 S.C. 523, 527, 377 S.E.2d 570, 572 (1989) ("[T]he test is what a reasonable juror would have understood the charge as meaning."). We therefore affirm the circuit court's jury charge on section 56–5–2950(A). *See id.* at 526, 377 S.E.2d at 572 ("Jury instructions must be considered as a whole and, if as a whole, they are free from error, any isolated portions which might be misleading do not constitute reversible error.").

## CONCLUSION

Accordingly, the circuit court's decision is

**AFFIRMED.**

THOMAS and LOCKEMY, JJ., concur.