**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Frankie Lee Davis, III, Appellant.

Appellate Case No. 2019-000416

———————

Appeal From Charleston County
R. Markley Dennis, Jr., Circuit Court Judge
Jennifer B. McCoy, Circuit Court Judge

———————

Opinion No. 5946
Heard March 15, 2022 – Filed September 28, 2022

———————

**AFFIRMED**

———————

Deputy Chief Appellate Defender Wanda H. Carter and
Appellate Defender Adam Sinclair Ruffin, both of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, and Senior
Assistant Deputy Attorney General William M. Blitch,
Jr., both of Columbia, and Solicitor Scarlett Anne
Wilson, of Charleston, all for Respondent.

———————

**MCDONALD, J.:** Frankie L. Davis, III, appeals his conviction for resisting
arrest, arguing the circuit court erred in: (1) finding probable cause for his arrest;
(2) denying his motions to suppress, for a directed verdict, and to compel the
personnel records of the arresting officer; and (3) refusing to allow him to question

the arresting officer about a prior incident for which he was disciplined.  We affirm the conviction.

**Facts and Procedural History**

In the early morning hours of August 19, 2018, Davis ordered two shots of Fireball Cinnamon Whisky and one Budweiser at the Silver Dollar bar on King Street in Charleston.  Leanne Benware, a bartender and manager, saw the bar owner take Davis's order.  When Davis was given his tab, his card was declined, and Davis then refused to pay.  After repeatedly asking Davis to pay his tab, Benware asked him to leave.  Again, Davis refused.  At that point, Benware called for her bouncers to escort Davis out and requested law enforcement.  It took two bouncers to remove Davis from the Silver Dollar.

Officer Nicholas Fusco of the City of Charleston Police Department (CPD) was patrolling Upper King when a Silver Dollar bouncer flagged him down.[1]  The bouncer told Fusco a patron had refused to pay his tab and Silver Dollar staff were ejecting him.  The bouncer gave Officer Fusco no additional information at that time, such as why the man had refused to pay his tab.

At first, Davis cooperated with the bouncers in leaving, but as the three approached the door—where uniformed police officers were waiting—Davis began struggling against the bouncers.  Officer Fusco initially thought the bouncers were kicking out an unrelated customer, but Benware then identified Davis as the person who had refused to pay and would not leave.  Fusco testified,

> We attempted to place him in handcuffs at that point, but he was resisting, he was pulling away.  He was trying to actively get away, trying to slip out of my grasp, my partner's grasp, at that point.
>
> . . .
>
> At this point, we were trying to place him in custody, because at that point they told me that he had not paid his tab.  He was actively trying to flee, which would have furthered the fact that he wasn't going to pay his tab.

---

[1] Officer Fusco's body camera footage was admitted as State's Exhibit 4.  His testimony was consistent with the circumstances surrounding Davis's arrest as shown on the body camera footage.

Benware testified Davis "was fighting with them, trying to get away. He kept grabbing at his waistband, just not cooperating at all." And, as Silver Dollar bouncer Garland Jackson described, "He was flailed out, stretched out, trying to just not be taken under the control that they were trying to do." Due to Davis's combative behavior, officers wrestled him to the ground, and Officer Fusco requested a patrol car meet them in front of the Silver Dollar. Fusco noted it would have been hazardous to attempt to walk Davis to his own patrol car, half a block away, during the early morning hours when the Upper King "entertainment district" is so crowded. Davis was charged with disorderly conduct, defrauding a public accommodation, resisting arrest, and unlawful carrying of a pistol.[2]

Initially, the officers' primary concern was keeping Davis contained until backup arrived. When they attempted to search Davis, officers had to hold him up by his pants because he would not cooperate with the search and kept folding his knees. Officers recovered a gun from the ground during the search; however, Fusco admitted he did not feel a gun on Davis when he first patted him down. Benware saw the gun fall from Davis's pants during the struggle; Jackson also saw the gun as Davis struggled with the officers.

Davis moved to suppress any evidence obtained as a result of the search and his arrest, arguing officers lacked reasonable suspicion to detain him outside the bar and lacked probable cause to arrest him.

On March 1, 2019, the Honorable R. Markley Dennis, Jr., held a pretrial hearing on Davis's motion to suppress. Davis argued all evidence obtained as a result of the arrest should be suppressed because he was unlawfully seized and arrested without probable cause. He further asserted the police officers lacked reasonable suspicion to detain him under *Terry v. Ohio*.[3] Noting *Terry* was inapplicable because Davis was arrested for failing to pay his bill, the circuit court found Davis's arrest was supported by probable cause and denied the motion to suppress.

---

[2] Davis's charges for defrauding a public accommodation and disorderly conduct were addressed in municipal court and are not at issue in this appeal.

[3] 392 U.S. 1 (1968) (addressing the reasonable suspicion required for a safety pat down or weapons frisk).

The case was tried before the Honorable Jennifer B. McCoy on March 7, 2019. Pretrial, Davis moved to compel Officer Fusco's CPD personnel records, arguing the records were relevant because Fusco was disciplined on a prior occasion for his "failure to comply with probable cause determinations." In Davis's view, this prior disciplinary incident was probative as to whether his own arrest was lawfully supported by probable cause. The State argued the incident did not relate to Officer Fusco's propensity for truthfulness, and the circuit court had already found probable cause existed for Davis's arrest. Judge McCoy reviewed the personnel records in camera and found nothing probative as to Officer Fusco's veracity or the legitimacy of Davis's arrest.[4] Thus, the circuit court denied the motion to compel but noted it would determine later in the trial whether Davis could cross-examine Fusco about the prior reprimand.

On cross-examination, Officer Fusco agreed CPD had a disciplinary process for officers alleged to have violated department procedures. When Davis asked Fusco whether he had been the subject of such a disciplinary investigation, the State objected, referencing Rule 403, SCRE. The circuit court sustained the objection and held a bench conference.

At the close of the State's case, the circuit court allowed Davis to further set forth his argument regarding his request to cross-examine Officer Fusco about the prior incident. Davis stated:

> I think I've stated the argument fairly concisely. I mean, just to—just to frame it, we have an argument here that there was an unlawful arrest. The lawfulness of an arrest is going to—it's almost entirely dependent on whether probable cause existed at the time of the arrest.

The circuit court explained:

> I sustained the objection pursuant to Rule 403. I found that it was more prejudicial than probative. And for this incident, having reviewed the personnel files previously in camera, I determined that incident had no bearing whatsoever on this incident so I sustained the State's objection. Understanding, obviously, over your argument that it was [relevant] and probative.

---

[4] Officer Fusco's personnel records were filed under seal.

Ultimately, the jury found Davis guilty of resisting arrest and acquitted him of unlawful carrying of a pistol. The circuit court sentenced Davis to one year of imprisonment with credit for 201 days served.

**Standard of Review**

"On appeal from a motion to suppress on Fourth Amendment grounds, this Court applies a deferential standard of review and will reverse only if there is clear error." *State v. Alston*, 422 S.C. 270, 279, 811 S.E.2d 747, 751 (2018) (quoting *Robinson v. State*, 407 S.C. 169, 180–81, 754 S.E.2d 862, 868 (2014)). "However, this deference does not bar this Court from conducting its own review of the record to determine whether the trial judge's decision is supported by the evidence." *Id.* (quoting *State v. Tindall*, 388 S.C. 518, 521, 698 S.E.2d 203, 205 (2010)).

**Law and Analysis**

**I. Probable Cause**

Davis argues the circuit court erred in denying his pretrial motion to suppress because Officer Fusco lacked probable cause to arrest him for defrauding a public accommodation. Davis contends the bar staff's affirmation that he was the person who refused to pay his tab, without more, was insufficient to support a finding of probable cause for his arrest. He asserts the circuit court erred in failing to suppress State's Exhibit 4—Fusco's body camera footage—because the video was obtained as the result of the unlawful arrest.[5] We disagree.

The Fourth Amendment to the United States Constitution grants citizens the right to be secure against unreasonable searches and seizures. U.S. Const. amend. IV.

> The fundamental question in determining the lawfulness of an arrest is whether probable cause existed to make the arrest. Probable cause for a warrantless arrest exists when the circumstances within the arresting officer's knowledge are sufficient to lead a reasonable person to believe that a crime has been committed by the person being arrested.

---

[5] Davis also contends the pistol should have been suppressed. Because Davis was acquitted of the weapon charge, we focus on the body camera footage.

*State v. Baccus*, 367 S.C. 41, 49, 625 S.E.2d 216, 220 (2006).

"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision." *Florida v. Harris*, 568 U.S. 237, 243–44 (2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (omission by court) (alteration by court)).

Section 45-1-50(A)–(B) of the South Carolina Code (2017) codifies the offense commonly known as "defrauding an innkeeper":

> (A) A person who:
>
> > (1) obtains food, lodging or other service, or accommodation at any hotel, motel, inn, boarding or rooming house, campground, cafe, or restaurant and intentionally absconds without paying for it; or
> >
> > (2) while a guest at any hotel, motel, inn, boarding or rooming house, campground, cafe, or restaurant, intentionally defrauds the keeper in a transaction arising out of the relationship as guest, is guilty of a misdemeanor
>
> . . . .
>
> (B) For purposes of this section prima facie evidence of intent to defraud is shown by:
>
> > (1) the second refusal of payment upon presentation when due and the return unpaid of any bank check or order for the payment of money given by a guest to any hotel, motel, inn, boarding or rooming house,

campground, cafe, or restaurant in payment of an obligation arising out of the relationship as guest. These facts also are prima facie evidence of an intent to abscond without payment;

(2) the failure or refusal of any guest at a hotel, motel, inn, boarding or rooming house, campground, cafe, or restaurant to pay, upon written demand, the established charge for food, lodging or other service, or accommodation;

. . . .

(4) the drawing, endorsing, issuing, or delivering to any hotel, motel, inn, boarding or lodging house, campground, cafe, or restaurant of any check, draft, or order for payment of money upon any bank or other depository in payment for established charges for food, lodging, or other service or accommodation, knowing at the time that there is not sufficient credit with the drawee bank or other depository for payment in full of the instrument drawn.

Officer Fusco testified regarding his probable cause determination:

At the time that I affected [sic] the arrest, I was approached by one of the doormen that works for the Silver Dollar, told me that there was somebody inside that had not paid for the tab, they wanted us to come over there. So we approached.

The security brought out the individual, which was later identified as Frankie Lee Davis, and then specifically said this is the guy that did not pay.

At that point, we went to place him in custody. And also due to the fact that he was trying to flee from us and up the road so we knew that he wasn't going to pay anyway. So at that point, we went to place him into custody and that's when he resisted us.

Evidence supports the circuit court's finding that a reasonable person with Officer Fusco's knowledge would believe Davis had committed a crime by repeatedly refusing to pay his tab at the Silver Dollar. Under § 45-1-50(B), a second refusal to pay a check when presented is "prima facie evidence of an intent to abscond without payment." A Silver Dollar bouncer flagged down Officer Fusco for assistance, Fusco saw bouncers escorting a recalcitrant patron from the establishment, and Benware identified the patron as the customer who had refused to pay his tab and her requests that he leave. Fusco's body camera footage supports the witness accounts. Based on these facts and circumstances, the circuit court properly found probable cause existed for Davis's arrest. *See State v. Manning*, 400 S.C. 257, 267, 734 S.E.2d 314, 319 (Ct. App. 2012) ("The finding that an arrest was made based upon probable cause is conclusive on appeal where supported by evidence."); *see also State v. Retford*, 276 S.C. 657, 660, 281 S.E.2d 471, 472 (1981) (reiterating "the legality of the arrest is to be determined under the facts and circumstances which existed at the time and place of arrest"); *Lapp v. S.C. Dep't of Motor Vehicles*, 387 S.C. 500, 505, 692 S.E.2d 565, 568 (Ct. App. 2010) ("An officer may lawfully arrest for a misdemeanor not committed within his presence where the facts and circumstances observed by the officer give him probable cause to believe that a crime has been freshly committed.").

Davis argues § 45-1-50 requires evidence that he "intentionally absconded" without payment and because he did not willingly leave the bar, he did not violate the statute. We reject this argument because to interpret the statute to address only a willing exit—and not the forced ejection of an uncooperative patron refusing to pay—would achieve an absurd result the Legislature could not possibly have intended. *See State v. Sweat*, 386 S.C. 339, 351, 688 S.E.2d 569, 575 (2010) ("Courts will reject a statutory interpretation which would lead to a result so plainly absurd that it could not have been intended by the Legislature or would defeat the plain legislative intention."). Davis's refusal to pay—followed by his refusal to leave and his scuffle with the bouncers as he was shown the door—provided the probable cause necessary for the responding officers to arrest him not only for the violation of § 45-1-50, but for disorderly conduct as well. Thus, the circuit court did not err in denying Davis's motion to suppress evidence obtained pursuant to his lawful arrest.

## II. Directed Verdict

For the reasons discussed above, Davis's argument that the circuit court erred in denying his motion for a directed verdict must also fail. "On appeal from the

denial of a directed verdict, this Court views the evidence and all reasonable inferences in the light most favorable to the State." *State v. Bennett*, 415 S.C. 232, 235, 781 S.E.2d 352, 353 (2016) (quoting *State v. Butler*, 407 S.C. 376, 381, 755 S.E.2d 457, 460 (2014)). "If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury." *State v. Harris*, 413 S.C. 454, 457, 776 S.E.2d 365, 366 (2015) (quoting *State v. Brandt*, 393 S.C. 526, 542, 713 S.E.2d 591, 599 (2011)).

Davis moved for a directed verdict at the close of the State's case, arguing the only information Officer Fusco had to support his arrest was the communication that Davis failed to pay his bar tab, which he contends was insufficient to constitute an intent to defraud under § 45-1-50. Davis claims he had a right to resist the arrest because it was not supported by probable cause and was, thus, unlawful. As noted in Section I, the circuit court properly found Officer Fusco had probable cause to arrest Davis. The witness testimony and body camera footage provided abundant evidence requiring the circuit court to submit the resisting arrest charge to the jury.

## III. Personnel Records and Prior Disciplinary Incident

Davis next challenges the circuit court's denial of his motion to compel Officer Fusco's personnel file, specifically the record of the prior incident for which Fusco was disciplined for detaining and searching a different individual without probable cause. Davis further argues the circuit court erred in refusing to allow him to cross-examine Officer Fusco about this prior incident. Again, we disagree.

Although the parties did not specifically reference Rule 608, SCRE, before the circuit court, the State argued Fusco's personnel records were not exculpatory and the prior incident did not "go towards truthfulness." The circuit court found the personnel file documents inadmissible under Rule 403, SCRE, and further noted, "I've reviewed the file and I've determined that there's nothing within these files that reflect on and of these officers' v[e]racity or anything of that nature."

Rule 403 provides, in pertinent part, that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Rule 403, SCRE. Fusco was disciplined in 2016 for attempting to search an individual in Marion Square without cause; however, the circumstances surrounding that search in a dissimilar situation are not relevant here because they do not make it more or less likely that Fusco had (or lacked) probable cause for the arrest and search of Davis outside the

Silver Dollar. *See* Rule 401, SCRE ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). "Evidence which is not relevant is not admissible." Rule 402, SCRE.

"The relevancy of evidence is an issue within the trial judge's discretion." *State v. Gillian*, 373 S.C. 601, 612, 646 S.E.2d 872, 878 (2007). Here, the circuit court properly found admission of the prior disciplinary matter was not relevant and would be highly prejudicial and likely misleading to the jury regarding the objective probable cause standard. *See Pringle*, 540 U.S. at 371 ("To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause."); *Mack v. Lott*, 415 S.C. 22, 23, 780 S.E.2d 761 (2015) (per curiam) ("[T]he proper standard for determining probable cause is an objective standard; that is, whether the facts known to the arresting officer at the time of the arrest, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.").

Moreover, as the circuit court recognized, the personnel files contain no record probative of Officer Fusco's truthfulness or untruthfulness. *See e.g.*, Rule 608(b), SCRE ("Specific instances of conduct of a witness . . . may . . . in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . ."); *State v. Quattlebaum*, 338 S.C. 441, 450, 527 S.E.2d 105, 109 (2000) ("The inquiry under Rule 608(b) is limited to those specific instances of misconduct which are clearly probative of truthfulness or untruthfulness . . ."). Accordingly, the circuit court did not abuse its discretion in denying Davis's motion to compel the personnel file and in declining to allow Davis to question Officer Fusco about the prior incident. *See Burgess*, 408 S.C. 421, 442, 759 S.E.2d 407, 418 (2014) ("As a general rule, a trial court's ruling on the proper scope of cross-examination will not be disturbed absent a manifest abuse of discretion." (quoting *Quattlebaum*, 338 S.C. at 450, 527 S.E.2d at 109)).

**Conclusion**

Based on the foregoing, Davis's conviction for resisting arrest is

**AFFIRMED.**

**THOMAS and HEWITT, JJ., concur.**