713 S.E.2d 278

**The TOWN OF MT. PLEASANT, Appellant,**

**v.**

**Treva ROBERTS, Respondent.**

**No. 27005.**

Supreme Court of South Carolina.

Heard June 7, 2011.

Decided July 11, 2011.

Charles Mac Gibson, Jr., of Charleston, and Ira A. Grossman, of Mt. Pleasant, for Appellant.

Diedreich P. von Lehe, III, of Charleston, for Respondent.

Justice BEATTY.

The Town of Mount Pleasant ("Town") appeals the circuit court's order reversing and dismissing Treva Roberts's municipal court conviction for driving under the influence ("DUI")[1]

---

1. S.C.Code Ann. § 56–5–2930 (2006).

on the ground the arresting officer's vehicle was not equipped with a video camera pursuant to section 56–5–2953 of the South Carolina Code.[2] The Town contends the circuit court erred in: (1) ruling on the appeal as it was divested of appellate jurisdiction given Roberts failed to obtain a bond or pay her court-ordered fine prior to initiating her appeal; and (2) "narrowly construing" section 56–5–2953 to require the reversal of Roberts's DUI conviction and dismissal of the charge. We affirm as modified.

## I. Factual/Procedural History

On November 11, 2007, at approximately 1:00 a.m., Officer Bruce Burbage of the Town of Mount Pleasant's Police Department conducted a traffic stop of Roberts after observing her driving erratically. As a result of his initial observations, Officer Burbage conducted three field sobriety tests, on which he noted Roberts "performed pretty poorly."

Subsequently, Officer Burbage arrested Roberts for DUI and transported her to the Mount Pleasant Police Department where Roberts was offered, but refused, a breathalyzer test. There was no recording of the initial traffic stop, field sobriety tests, or the arrest as neither Officer Burbage's vehicle nor the backup officer's was equipped with a video camera.[3]

---

2. Section 56–5–2953 provides in relevant part:
 (A) A person who violates Section 56–5–2930, 56–5–2933, or 56–5–2945 must have his conduct at the incident site and the breath test site videotaped.
 (1) The videotaping at the incident site must:
 (a) begin not later than the activation of the officer's blue lights and conclude after the arrest of the person for a violation of Section 56–5–2930, 56–5–2933, or a probable cause determination that the person violated Section 56–5–2945; and
 (b) include the person being advised of his *Miranda* rights before any field sobriety tests are administered, if the tests are administered.
 S.C.Code Ann. § 56–5–2953 (2006). This section was amended effective February 10, 2009. Act No. 201, 2008 S.C. Acts 1682–85. Accordingly, we have cited to the 2006 Code as the amended statute is not applicable to the instant case.

3. At the time of Roberts's arrest, the "best case scenario" was that only two of the Town's twelve police department vehicles on patrol that night were camera-equipped. According to the annual inventory records of the South Carolina Department of Public Safety, the Town in

In response to Roberts's discovery motions,[4] which included a request for production of the incident site videotape, the Town's prosecutor forwarded an "Affidavit for Failure to Produce Videotape" executed by Officer Burbage on October 16, 2009. The affidavit, a form generated by the Town, included a "checked" box that stated:

At the time of the Defendant's arrest the vehicle I was operating had not been equipped with a videotaping device and therefore pursuant to Section 18 of Senate Bill 174 of 1998,[5] the videotaping requirement regarding vehicles is not applicable.

On October 30, 2009, a municipal court judge conducted a jury trial on Roberts's DUI charge. Prior to trial, Roberts moved to dismiss the charge based on Officer Burbage's failure to videotape the entire arrest pursuant to section 56–5–2953. Roberts asserted that section 56–5–2953 conferred upon her a statutory right to have the roadside arrest videotaped. Because Officer Burbage failed to comply with the statutorily-mandated procedure, Roberts claimed this violation warranted the dismissal of her DUI charge. The motion to dismiss was denied.

The Town relied on subsection (G) of the statute for the proposition that the videotaping requirement took effect only "once the law enforcement vehicle is equipped with a videotaping device."[6] Because Officer Burbage's vehicle was not

---

2007 had a total of seven in-car camera systems, of which one was acquired in 2001 and the remaining six in 2002.

4. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Rule 5, SCRCrimP.

5. Section 18 provides in relevant part:
The provisions in Section 56–5–2953(A), (B), and (C) take effect for each law enforcement vehicle used for traffic enforcement as soon as the law enforcement vehicle used for traffic enforcement is equipped with a videotaping device.
Act No. 434, 1998 S.C. Acts 3236.

6. Subsection (G) provides in pertinent part:
The provisions contained in Section 56–5–2953(A), (B), and (C) take effect for each law enforcement vehicle used for traffic enforcement once the law enforcement vehicle is equipped with a videotaping device.

equipped with a video camera, the Town argued that the videotaping provisions of section 56–5–2953 were inapplicable and, thus, the failure to videotape Roberts's arrest did not warrant the dismissal of the DUI charge.[7]

In support of her motion, Roberts called several law enforcement officers from Charleston, Berkeley, and Dorchester counties in an attempt to establish that the Town had fewer video cameras than other municipalities despite the Town's significantly higher number of DUI arrests.[8] Given these statistics, Roberts argued that the Town had willfully avoided complying with the 1998 statute as it had not requested from the South Carolina Department of Public Safety (DPS) additional video cameras in response to the increasing number of DUI arrests. Roberts also offered evidence that the Town was financially able to purchase additional video cameras, but had chosen not to do so.[9]

The Town countered Roberts's arguments by claiming that DPS was solely responsible for providing the video cameras and, thus, the Town did not have a duty to request or

---

*Id.* § 56–5–2953(G).

7. As will be discussed, this argument would be valid but for the Town's obvious intentional efforts to avoid complying with section 56–5–2953.

8. According to records produced by the South Carolina Law Enforcement Division (SLED), the Town made 2,796 DUI arrests between 1998 and 2008. Based on these arrest records, the Town ranked first out of all municipalities for total DUI arrests. The Department of Public Safety used these statistics to determine the priority for issuing additional video cameras; thus, law enforcement agencies with the "highest ranking" for DUI arrests received priority in terms of the issuance of additional video cameras.

 Despite these statistics, several nearby municipalities with fewer DUI arrests had received more video cameras from DPS than the Town, for example: (1) the City of Folly Beach made 162 DUI arrests and received 6 cameras; (2) the Town of Moncks Corner made 198 DUI arrests and received 13 cameras; and (3) the City of the Isle of Palms made 339 DUI arrests and received 13 cameras.

9. Roberts offered evidence that the Town had recently expended: (1) $65,145 for the replacement of a "Town of Mt. Pleasant" sign at the Long Point Road Exit of I–526 East; (2) $100,000 for a marketing firm's development of a new Town slogan and logo; (3) $1,328,064.70 for the renovation of the "Farmer's Market" on Coleman Boulevard; and (4) $6,000,000 for a parcel of property known as the "O.K. Tire Store," which was intended to be developed into a park.

purchase additional cameras in order to comply with the statute.[10]

At the conclusion of the pre-trial hearing, the municipal court judge denied Roberts's motion to dismiss based on a "strict interpretation" of section 56–5–2953. In his written return, the judge concluded that "there is no requirement that the Town of Mount Pleasant obtain any video cameras and that the statute only provides what the Town must do once they get the video cameras on board." Further, the judge ruled that "Section 56–5–2953(G) indicated that the other provisions of [the statute] take effect ... once the vehicle is equipped with a [videotaping] device."

Roberts was convicted and appealed her conviction to the circuit court, arguing the municipal court judge erred in denying her motion to dismiss the charge based upon the Town's failure to comply with the "mandatory" videotaping provisions of section 56–5–2953.

The Town moved to dismiss the appeal for lack of jurisdiction based on Roberts's failure to obtain a bond or pay the court-ordered fine prior to initiating the appeal. The Town contended the circuit court was without jurisdiction to rule on the appeal given Roberts did not comply with the procedural requirements of section 14–25–95 of the South Carolina Code,[11] which governs appeals from municipal court to circuit court.

---

10. In support of its claim, the Town referenced subsection (D) of section 56–5–2953, which states in relevant part:

> The Department of Public Safety is responsible for purchasing, maintaining, and supplying all videotaping equipment for use in all law enforcement vehicles used for traffic enforcement. The Department of Public Safety also is responsible for monitoring all law enforcement vehicles used for traffic enforcement to ensure proper maintenance of videotaping equipment.
>
> *Id.* § 56–5–2953(D).

11. Section 14–25–95 provides:

> Any party shall have the right to appeal from the sentence or judgment of the municipal court to the Court of Common Pleas of the county in which the trial is held. Notice of intention to appeal, setting forth the grounds for appeal, must be given in writing and served on the municipal judge or the clerk of the municipal court within ten days after sentence is passed or judgment rendered, or the appeal is considered waived. The party appealing shall enter into a

The circuit court judge issued a written order in which it reversed Roberts's DUI conviction and dismissed the charge. The judge initially determined that it had "subject matter jurisdiction" to hear the appeal. In so ruling, the judge found jurisdiction was vested in the circuit court when Roberts timely filed and served her notice of appeal as required by section 14–25–95. The judge further concluded that Roberts's "non-entry into a bond and non-payment of the fine assessed [did] not deprive [the court] of the subject matter jurisdiction." Additionally, the judge held that all issues with respect to the non-entry into a bond or non-payment of the fine were moot as Roberts had appeared at the hearing and paid her fine the day of the hearing.

As to the merits of Roberts's appeal, the judge specifically found that the videotaping requirements of section 56–5–2953 were mandatory based on this Court's decision in *City of Rock Hill v. Suchenski*, 374 S.C. 12, 646 S.E.2d 879 (2007).[12] Interpreting subsection (G) of the statute, the judge concluded that this provision was "merely to provide a reasonable grace period for law enforcement agencies to equip their vehicles with video recording devices." The judge explained that to construe subsection (G) as proposed by the Town would permit law enforcement agencies to "successfully circumvent [the statute's videotaping requirements] *ad infinitum*" by not requesting video cameras from DPS.

The judge also ruled that the Town's failure to produce a videotape of Roberts's conduct at the incident site was not "excused" as none of the enumerated exceptions in subsection (B) of section 56–5–2953[13] were satisfied.

---

bond, payable to the municipality, to appear and defend the appeal at the next term of the Court of Common Pleas or shall pay the fine assessed.

S.C.Code Ann. § 14–25–95 (Supp.2010).

**12.** *City of Rock Hill v. Suchenski*, 374 S.C. 12, 15, 646 S.E.2d 879, 880 (2007) ("Section 56–5–2953 commands the arresting officer to videotape the individual during a DUI arrest.").

**13.** *Id.* § 56–5–2953(B) ("Failure by the arresting officer to produce the videotapes required by this section is not alone a ground for dismissal of any charge made pursuant to Section 56–5–2930, 56–5–2933, or 56–5–2945 if [certain exceptions are met] ).''

The judge concluded that the Town's failure to comply with the videotaping requirements a decade after the enactment of section 56–5–2953 was "unreasonable" and constituted a violation of the statute that warranted the reversal of Roberts's conviction and the dismissal of the DUI charge.

The Town appealed the circuit court's order to the Court of Appeals. This Court certified the case from the Court of Appeals pursuant to Rule 204(b), SCACR.

## II. Discussion

### A. Standard of Review

 "In criminal appeals from a municipal court, the circuit court does not conduct a de novo review; rather, it reviews the case for preserved errors raised to it by an appropriate exception." *City of Cayce v. Norfolk S. Ry. Co.*, 391 S.C. 395, 399, 706 S.E.2d 6, 8 (2011); *see* S.C.Code Ann. § 14–25–105 (Supp.2010) ("There shall be no trial de novo on any appeal from a municipal court."). "Therefore, our scope of review is limited to correcting the circuit court's order for errors of law." *Suchenski*, 374 S.C. at 15, 646 S.E.2d at 880.

### B. Appellate Jurisdiction

As a threshold matter, we must address the Town's jurisdictional challenge as any defect in the circuit court's appellate jurisdiction would necessarily affect this Court's jurisdiction to rule on the Town's appeal.

The Town asserts the circuit court judge erred in characterizing its jurisdictional challenge as one that implicated subject matter jurisdiction rather than appellate jurisdiction. The Town avers the circuit court judge did not have appellate jurisdiction to rule on Roberts's appeal given Roberts failed to either pay the court-ordered fine or obtain a bond prior to initiating her appeal to the circuit court. Under the Town's interpretation of section 14–25–95, the circuit court could only be vested with appellate jurisdiction if one of the above-listed prerequisites was satisfied.

Because our analysis of this issue and the Town's second issue is dependent upon our evaluation of the applicable

statutes, we begin with an overview of this state's well-established rules of statutory construction.

## 1.

"The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Bryant v. State,* 384 S.C. 525, 529, 683 S.E.2d 280, 282 (2009). When a statute is penal in nature, it must be strictly construed against the State and in favor of the defendant. *State v. Blackmon,* 304 S.C. 270, 273, 403 S.E.2d 660, 662 (1991). However, "[a]ll rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *State v. Sweat,* 386 S.C. 339, 351, 688 S.E.2d 569, 575 (2010) (citation omitted).

In ascertaining legislative intent, "a court should not focus on any single section or provision but should consider the language of the statute as a whole." *Mid–State Auto Auction of Lexington, Inc. v. Altman,* 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996). Where the statute's language is plain, unambiguous, and conveys a clear, definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning. *Gay v. Ariail,* 381 S.C. 341, 345, 673 S.E.2d 418, 420 (2009).

If the statute is ambiguous, however, courts must construe the terms of the statute. *Lester v. S.C. Workers' Comp. Comm'n,* 334 S.C. 557, 561, 514 S.E.2d 751, 752 (1999). "A statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers." *Sloan v. S.C. Bd. of Physical Therapy Exam'rs,* 370 S.C. 452, 468, 636 S.E.2d 598, 606–07 (2006). In interpreting a statute, the language of the statute must be read in a sense that harmonizes with its subject matter and accords with its general purpose. *Hitachi Data Sys. Corp. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992).

"Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law." *Bennett v. Sullivan's Island Bd. of Adjustment,* 313 S.C. 455, 458, 438 S.E.2d 273, 274 (Ct.App.1993). Courts will reject a

statutory interpretation that would lead to a result so plainly absurd that it could not have been intended by the Legislature or would defeat the plain legislative intention. *Unisun Ins. Co. v. Schmidt,* 339 S.C. 362, 368, 529 S.E.2d 280, 283 (2000).

### 2.

As an initial matter, we agree with the Town's argument that the circuit court judge erred in classifying the jurisdictional challenge as one of subject matter jurisdiction. *See Great Games, Inc. v. S.C. Dep't of Revenue,* 339 S.C. 79, 83 n. 5, 529 S.E.2d 6, 8 n. 5 (2000) ("The failure of a party to comply with the procedural requirements for perfecting an appeal may deprive the court of 'appellate' jurisdiction over the case, but it does not affect the court's subject matter jurisdiction."); *see also State v. Brown,* 358 S.C. 382, 596 S.E.2d 39 (2004) (recognizing that failure to timely appeal a conviction from magistrate court does not implicate subject matter jurisdiction).

 Clearly, the circuit court had subject matter jurisdiction to hear and determine Roberts's appeal from her municipal court conviction as the Legislature has specifically authorized it to do so. *See* S.C.Code Ann. § 14–5–340 (1977) ("Circuit judges may hear appeals from magistrates' courts and municipal courts to the court of general sessions and the court of common pleas, upon notice as required by law being given for the hearing of such appeals."); S.C. Const. art. V, § 11 ("The Circuit Court shall be a general trial court with original jurisdiction in civil and criminal cases, except those cases in which exclusive jurisdiction shall be given to inferior courts, and shall have such appellate jurisdiction as provided by law.").

 As for the circuit court's appellate jurisdiction, we find that Roberts properly met the prerequisites of section 14–25–95. Pursuant to this Code section, Roberts was required to file her notice of appeal with the municipal court "within ten days after sentence is passed or judgment rendered, or the appeal is considered waived." *Id.* § 14–25–95. There is no dispute that Roberts timely filed her appeal with the municipal court. Having met this procedural prerequisite, the circuit court was vested with appellate jurisdiction to determine

Roberts's appeal. *Cf. Town of Hilton Head Island v. Godwin,* 370 S.C. 221, 224, 634 S.E.2d 59, 61 (Ct.App.2006) ("A party who fails to timely appeal or take any other timely action necessary to correct an error is procedurally barred from contesting the validity of the conviction.").

Unlike the Town, we do not believe the circuit court was divested of appellate jurisdiction because Roberts failed to obtain a bond or pay her court-ordered fine prior to filing her notice of appeal with the municipal court. These two provisions of section 14–25–95 do not implicate jurisdiction as there is no temporal restriction in that sentence of the statute. Instead, these provisions serve the purpose of insuring that an appellant will appear for the hearing before the circuit court. If an appellant fails to comply with these provisions, the municipality may issue a bench warrant to address any delinquency on the part of the appellant.

Finally, we note that Roberts appeared at the hearing and paid her fine; therefore, any related issue is moot. *See Linda Mc Company, Inc. v. Shore,* 390 S.C. 543, 557, 703 S.E.2d 499, 506 (2010) ("A case becomes moot when judgment, if rendered, will have no practical legal effect upon the existing controversy. This is true when some event occurs making it impossible for the reviewing Court to grant effectual relief." (citations omitted)).

## C. Reversal of DUI conviction/Dismissal of DUI charge

Having found that the circuit court was vested with appellate jurisdiction, we must next decide whether the Town's violation of the videotaping provisions of section 56–5–2953 warranted the reversal of Roberts's DUI conviction and the dismissal of the charge.

Although this is the specific question presented, we believe there is a more fundamental question to consider in analyzing section 56–5–2953: if the Legislature imposes a statutory obligation on the State to create evidence and provides a sanction for inexcusable noncompliance, does the State's failure to do so necessarily warrant a *per se* dismissal of the accused's case?

Up until this point, our appellate courts have affirmatively answered this question when a law enforcement agency inex-

cusably failed to videotape a DUI arrest with an *existing* video camera. In the instant case, the Town failed to create a videotape of Roberts's DUI arrest because the patrol vehicle had *never been equipped* with a video camera.

The Town argues the circuit court judge erred in construing section 56–5–2953 to require the dismissal of Roberts's DUI charge on the basis that the arresting officer's vehicle was not equipped with a video camera.

Applying the rules of statutory construction, the Town maintains that in promulgating section 56–5–2953 the Legislature clearly provided for instances where an incident site videotape would not be available as demonstrated by certain statutory exceptions.[14] Furthermore, because the Legislature mandated in subsection (D) that DPS would supply the video cameras, the Town claims that it was not obligated to purchase or request additional videotape equipment; thus, its failure to equip Officer Burbage's vehicle with a camera rendered the mandatory provisions of section 56–5–2953 inapplicable pursuant to subsection (G).

The key case in the analysis of this issue is *City of Rock Hill v. Suchenski*, 374 S.C. 12, 646 S.E.2d 879 (2007). In *Suchenski*, the defendant was convicted in municipal court for driving with an unlawful alcohol concentration (DUAC). *Id.* at 14, 646 S.E.2d at 879. On appeal, the circuit court reversed the conviction based on the City of Rock Hill's failure to videotape the defendant's entire arrest as the arresting officer's camera "ran out of tape." *Id.* The circuit court did not address whether the arresting officer's failure to comply with section 56–5–2953 was excused pursuant to an exception in subsection (B) of the statute. *Id.* at 14, 646 S.E.2d at 880.

This Court affirmed the circuit court's decision. In so ruling, we found that any argument concerning the exceptions for noncompliance in section 56–5–2953(B) was not preserved as the circuit court had not ruled on this issue and the City of Rock Hill had not sought a post-judgment ruling regarding

---

14. *See, e.g., State v. Landis*, 362 S.C. 97, 606 S.E.2d 503 (Ct.App.2004) (recognizing that law enforcement agency's failure to videotape a DUI arrest was excusable as the arresting officer submitted an affidavit that certified the videotape machine was inoperable at the time of the arrest).

this issue. *Id.* at 16, 646 S.E.2d at 880. We also rejected the City of Rock Hill's contention that a violation of the videotaping statute should not result in dismissal of a charge if there was no showing of prejudice to the defendant. *Id.* at 16, 646 S.E.2d at 881. We found the plain language of the statute provided that the "failure to produce videotapes would be a ground for dismissal if no exceptions apply." *Id.*

Although the decision in *Suchenski* indisputably established that the videotaping provisions of section 56–5–2953 are mandatory and not optional, we did not address whether the failure to comply with the statute could be excusable if the law enforcement vehicle was never equipped with a camera. Specifically, we were not required to assess the import of subsection (G) with respect to the statutory exceptions of subsection (B).

Subsection (B) of section 56–5–2953 outlines several statutory exceptions that excuse noncompliance with the mandatory videotaping requirements. Noncompliance is excusable: (1) if the arresting officer submits a sworn affidavit certifying the video equipment was inoperable despite efforts to maintain it; (2) if the arresting officer submits a sworn affidavit that it was impossible to produce the videotape because the defendant either (a) needed emergency medical treatment or (b) exigent circumstances existed; (3) in circumstances including, but not limited to, road blocks, traffic accidents, and citizens' arrests; or (4) for any other valid reason for the failure to produce the videotape based upon the totality of the circumstances.

Our appellate courts have strictly construed section 56–5–2953 and found that a law enforcement agency's failure to comply with these provisions is fatal to the prosecution of a DUI case. *See Suchenski*; 374 S.C. at 17, 646 S.E.2d at 881 (holding that "dismissal of the DUAC charge is an appropriate remedy provided by section 56–5–2953 where a violation of subsection (A) is not mitigated by subsection (B) exceptions"); *Murphy v. State,* 392 S.C. 626, 709 S.E.2d 685 (S.C. Ct.App. 2011) (recognizing the State's noncompliance with section 56–5–2953, which is not mitigated by a statutory exception, warranted dismissal; holding that video complied with section 56–5–2953(A) even though it did not capture a continuous full view of the accused at the incident site (citing *Suchenski* )).

Although our appellate courts have acknowledged these statutory "escape valves," they have so far considered their application only where a law enforcement agency failed to create a video recording of the DUI arrest because the video camera malfunctioned. Our courts, however, have not analyzed whether these exceptions apply where the law enforcement vehicle has never been equipped with a video camera as in the instant case.

■■ Taking into consideration the purpose of section 56–5–2953, which is to create direct evidence of a DUI arrest, we find the Town's protracted failure to equip its patrol vehicles with video cameras, despite its "priority" ranking, defeats the intent of the Legislature and violates the statutorily-created obligation to videotape DUI arrests. Accordingly, we do not believe that the Town should be able to continually evade its duty by relying on subsection (G) of section 56–5–2953. Thus, we hold that the Town's failure to equip its patrol vehicles does not negate the application of the statutory exceptions in subsection (B).

Under the specific facts of this case, we find the Town failed to satisfy any of the above-outlined statutory exceptions. Significantly, the Town conceded in municipal court and before the circuit court that the initial three exceptions did not apply and could not justify its failure to videotape Roberts's DUI arrest.

Thus, the only feasible exception is that there was a "valid reason" for the Town's failure to comply with the mandatory videotaping requirements. Although the Town did not explicitly reference this provision, it argued that Officer Burbage's patrol vehicle was not equipped with a video camera because DPS had not supplied the Town with a sufficient number of cameras and the Town was not obligated to expend funds to purchase the cameras.

As we interpret the circuit court judge's order, we do not discern a ruling that the Town was obligated to purchase the cameras with its own funds. Instead, the circuit court judge imposed an obligation on the Town to request additional video cameras given the Town's "high ranking" for DUI arrests as compared to other municipalities.

Consequently, the question becomes whether the Town's failure to request additional video cameras constituted a "valid reason for the failure to produce the videotape based upon the totality of the circumstances." *Id.* § 56–5–2953(B). We find the Town's explanation is disingenuous given its significantly higher number of DUI arrests as compared to smaller municipalities.[15] Moreover, the Town's interpretation of subsection (G) is nonsensical as the requirements of section 56–5–2953 could be circumvented in perpetuity if a law enforcement agency purposefully does not request additional video cameras.

Admittedly, the Legislature was silent with respect to a time requirement for when vehicles must be equipped with video cameras. However, applying the rules of statutory construction, we find the Town's interpretation would defeat the legislative intent of section 56–5–2953 and the overall DUI reform enacted in 1998.

▆▆▆ Finding that neither subsection (G) nor the statutory exceptions in subsection (B) excuse the Town's noncompliance with section 56–5–2953, the question becomes whether the failure to videotape a DUI arrest warrants a *per se* dismissal of the DUI case or whether, as the Town contends, the accused must establish that he or she was prejudiced.

As evidenced by this Court's decision in *Suchenski,* the Legislature clearly intended for a *per se* dismissal in the event a law enforcement agency violates the mandatory provisions of section 56–5–2953. Notably, the Legislature specifically provided for the dismissal of a DUI charge unless the law enforcement agency can justify its failure to produce a videotape of a DUI arrest. *Id.* § 56–5–2953(B) ("Failure by the arresting officer to produce the videotapes required by this section is not alone a ground for dismissal of any charge made pursuant to Section 56–5–2930 . . . if [certain exceptions are met]."). The term "dismissal" is significant as it explicitly

---

15. It is interesting to note that the Town requested fifty additional cameras in May 2009 apparently after recognizing that its failure to videotape DUI arrests may severely impact the prosecution of its pending DUI cases. The Town's request was in response to a DPS survey, dated April 28, 2009, that stated in part, "The Department is glad to announce that the original requests have been fulfilled, and we have officially awarded over 3200 camera systems."

designates a sanction for an agency's failure to adhere to the requirements of section 56–5–2953.

Furthermore, it is instructive that the Legislature has not mandated videotaping in any other criminal context. Despite the potential significance of videotaping oral confessions, the Legislature has not required the State to do so. By requiring a law enforcement agency to videotape a DUI arrest, the Legislature clearly intended strict compliance with the provisions of section 56–5–2953 and, in turn, promulgated a severe sanction for noncompliance.

Thus, we hold that dismissal is the appropriate sanction in the instant case as this was clearly intended by the Legislature and previously decided by this Court in *Suchenski.*

Our decision should in no way be construed as eradicating subsection (G) of section 56–5–2953. Instead, we emphasize that subsection (G) is still viable and must be read in conjunction with subsection (B) as these exceptions, under the appropriate factual circumstances, could operate to excuse a law enforcement agency's noncompliance due to the failure to equip a patrol vehicle with a video camera. For example, we can conceive of a scenario where a law enforcement agency establishes a "valid reason" for failing to create a video of the incident site by offering documentation that, despite concerted efforts to request video cameras, it has not been supplied with the cameras from DPS.

### III. Conclusion

In conclusion, the circuit court judge erred in classifying the Town's jurisdictional challenge as one involving subject matter jurisdiction. Because Roberts timely served her notice of appeal on the municipal court, she met the procedural requirements of section 14–25–95; thus, her failure to obtain a bond or pay the court-ordered fine did not divest the circuit court of appellate jurisdiction.

As to the merits, we find the Town's prolonged failure to equip its patrol vehicles with video cameras defeats the intent of the Legislature; therefore, the Town should not be able to avoid its statutorily-created obligation to produce a videotape by repeatedly relying on subsection (G) of section 56–5–2953. Because the Town failed to establish any statutory exception

to excuse its noncompliance, we hold the circuit court judge correctly reversed Roberts's DUI conviction and dismissed the charge. Accordingly, we affirm as modified the decision of the circuit court judge.

**AFFIRMED AS MODIFIED.**

TOAL, C.J., PLEICONES, KITTREDGE and HEARN, JJ., concur.