758 S.E.2d 911

The STATE, Respondent,

v.

Christopher Lee JOHNSON, Appellant.

Appellate Case No. 2011–201808.

No. 5230.

Court of Appeals of South Carolina.

Heard Jan. 7, 2014.

Decided May 14, 2014.

Rehearing Denied June 25, 2014.

---

Dayne C. Phillips, of Lexington, and Appellate Defender Carmen Vaughn Ganjehsani, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Mark Reynolds Farthing, both of Columbia, for Respondent.

THOMAS, J.

Christopher Lee Johnson appeals his conviction for driving under the influence (DUI), arguing the circuit court erred in

denying his motion to dismiss the charge because the Greenville Police Department (GPD) failed to comply with the video recording requirements of section 56–5–2953 of the South Carolina Code (Supp.2013).[1] We affirm.

## FACTS/PROCEDURAL HISTORY

In the early hours of March 18, 2010, Officer Jesse Lowe of the GPD conducted a traffic stop of Johnson after observing Johnson (1) operating a vehicle without its headlights on and with an inoperable brake light and (2) stopping at a red light, entering the intersection, and stopping again in the middle of the red-lit intersection. During the traffic stop, Officer Lowe noted Johnson's eyes were "glassy" and that he smelled of alcohol. Officer Lowe also noticed Johnson was wearing a wristband from a local restaurant and bar. After informing Johnson of his traffic violations, Officer Lowe asked Johnson if he had consumed any alcohol. Johnson responded "too much," and stated he had consumed "six to seven beers at least." As a result of his initial observations, Officer Lowe conducted three field sobriety tests.[2] After Johnson failed these tests, Officer Lowe placed Johnson under arrest for DUI and transported him to the Greenville County Detention Center.

Upon arrival at the detention center, Officer Lowe prepared an affidavit regarding his failure to produce a video recording of Johnson's conduct at the incident site. On the affidavit, Officer Lowe checked a box reading:

At the time of the Defendant's arrest the vehicle I was operating had not been equipped with [a] videotaping device and therefore pursuant to Section 18 of Senate Bill 174 of

---

1. The code provision in effect at the time Johnson committed the offense in 2010 has not since been amended; thus, we cite to the current version of section 56–5–2953.

2. The field sobriety tests were recorded on a personal camera by Officer Donnie Ng of the GPD, who arrived at the scene of the traffic stop after Johnson was already out of his car. Upon Officer Ng's arrival, Officer Lowe asked him if he had a video camera in his vehicle, which Officer Ng did not. The video recorded by Officer Ng did not begin until after Johnson had already been pulled over and exited his car. The State has not argued on appeal that the video recorded by Officer Ng meets the requirements of section 56–5–2953.

1998, the videotaping requirement regarding vehicles is not applicable.

Johnson was subsequently indicted for second-offense DUI and driving under suspension, and the case proceeded to trial. Prior to trial, Johnson's counsel moved to dismiss the DUI charge on the ground that the GPD failed to comply with the video recording requirements of section 56–5–2953.

At a pre-trial hearing on this matter, Lieutenant Joe Browning testified regarding his management of the GPD's budget and the GPD's efforts over the previous decade to obtain and maintain video recording systems for their law enforcement vehicles. Lieutenant Browning stated the GPD acquired its first four camera systems from the Department of Public Safety (DPS) as part of a safety award some time prior to 2001. Lieutenant Browning testified the GPD began an effort in December 2001 to purchase its own camera systems and expended $35,550 on eighteen camera systems. However, these camera systems began failing soon after the purchase, and the GPD sold them all for $155.

According to Lieutenant Browning, on February 13, 2002, DPS informed the GPD that it would be receiving VHS-based camera systems from DPS following "the change with the DUI law." The GPD subsequently requested fifteen camera systems. On August 8, 2002, the GPD received one camera system from DPS along with a letter informing them that funds were not available to provide all the requested camera systems at one time. Instead, a computerized random selection process was utilized, by which the GPD received one camera system. By the end of 2004, the GPD had received twenty-one camera systems.

Lieutenant Browning further testified that the GPD was confined to the amount of camera systems it had previously requested and could not request any more camera systems until 2009. After waiting to no avail for DPS to take more camera system requests, the GPD established a committee in late 2007 and early 2008 to look into purchasing its own camera systems. The committee decided the GPD should utilize digital-based camera systems rather than VHS-based camera systems due to the advantages in storage, installation, and video quality. The committee requested recording sys-

tems from nine different companies in order to test the equipment. In February 2010, the GPD began purchasing digital-based camera systems from Kustom Signals.[3] As of the date of Johnson's trial, the GPD had spent $463,463.99 to purchase eighty-nine digital-based camera systems.

In April of 2009, DPS notified law enforcement agencies that the 2002 requests had been satisfied and it was now accepting requests for additional camera systems. Lieutenant Browning testified that this was the first opportunity since 2002 to request additional camera systems. DPS also informed law enforcement agencies that it would fulfill requests for VHS-based camera systems before fulfilling any requests for digital-based camera systems.[4] According to Lieutenant Browning, the GPD opted to request twenty digital-based camera systems in 2009 rather than VHS-based camera systems because the GPD had already expended a significant amount of its own funds transitioning towards digital-based recording.[5] As of the date of Johnson's trial, the GPD had yet to receive any camera systems from DPS since its 2009 request.

Elaine Johnson, an employee of DPS and previously the Director of the Department of Resource Management when section 56–5–2953 was enacted, testified next regarding DPS's efforts to implement legislation and provide video recording systems to state law enforcement agencies. She indicated that DPS is responsible for purchasing, installing, and maintaining video recording systems. Johnson stated that, as she understood it, section 56–5–2953 was enacted so that individual law enforcement agencies would not have to spend their own money on camera systems. According to Johnson, it will take

---

3. Lieutenant Browning explained the GPD's delay in purchasing these camera systems was due to the lengthy process of attempting to obtain approval and extra funding from state and local government.

4. The Greenville Sheriff's Department (GSD), the highest priority agency in the state to request VHS-based camera systems in 2009, did not receive any camera systems until over a month after Johnson's arrest. The GSD had second priority statewide; the GPD had twenty-first priority.

5. Lieutenant Browning testified the GPD would have requested forty camera systems in 2009 but he did not believe DPS could supply that many.

fifteen years to fulfill the number of camera systems requested statewide in 2009. She further verified that the GPD had received twenty-one camera systems as of 2004, and that the GPD's 2009 request for twenty digital-based camera systems was still pending.

Johnson's counsel then argued our supreme court's holding in *Town of Mount Pleasant v. Roberts*, 393 S.C. 332, 713 S.E.2d 278 (2011), warranted dismissal of the DUI charge. At the conclusion of the pre-trial hearing, the circuit court denied the motion to dismiss, finding the facts of this case were distinguishable from those in *Roberts* because, unlike the law enforcement agency in *Roberts*, the GPD "was always seeking to get to the trough to get the equipment when they could, expending their own dollars in addition." The case proceeded to trial and the jury convicted Johnson of DUI and driving under suspension.[6] This appeal followed.

## ISSUE ON APPEAL

Did the circuit court err in denying Johnson's motion to dismiss his DUI charge because of the GPD's failure to comply with the video recording requirements of section 56–5–2953 of the South Carolina Code (Supp.2013)?

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate court is bound by the trial court's factual findings unless they are clearly erroneous. *Id.*

## LAW/ANALYSIS

■ A person who commits the offense of DUI "must have his conduct at the incident site and the breath test site video recorded ... [and] [t]he video recording at the incident site must ... not begin later than the activation of the officer's blue lights." S.C.Code Ann. § 56–5–2953(A)(1)(a)(i) (Supp. 2013). However, subsection 56–5–2953(B) outlines four exceptions that excuse noncompliance with subsection (A)'s mandatory video recording requirements:

> Failure to comply with the video recording requirement is excused: (1) if the arresting officer submits a sworn affida-

---

**6.** At trial, Johnson stipulated to knowingly driving with a suspended license.

vit certifying the video equipment was inoperable despite efforts to maintain it; (2) if the arresting officer submits a sworn affidavit that it was impossible to produce the video recording because either (a) the defendant needed emergency medical treatment or (b) exigent circumstances existed; (3) in circumstances including, but not limited to, road blocks, traffic accident investigations, and citizen's arrests; or (4) for any other valid reason for the failure to produce the video recording based upon the totality of the circumstances.

*State v. Manning*, 400 S.C. 257, 264, 734 S.E.2d 314, 317–18 (Ct.App.2012) (citing § 56–5–2953(B)). Pursuant to subsection (G) of 56–5–2953, the provisions of subsections (A) and (B) of 56–5–2953 take effect for each law enforcement vehicle used for traffic enforcement once the law enforcement vehicle is equipped with a video recording device. The failure to comply with the provisions of section 56–5–2953 merits a *per se* dismissal. *Town of Mount Pleasant v. Roberts*, 393 S.C. 332, 348, 713 S.E.2d 278, 286 (2011).

Johnson alleges the failure to produce a video recording in compliance with section 56–5–2953 merited the dismissal of the DUI charge pursuant to the supreme court's holding in *Roberts*. In *Roberts*, a Mount Pleasant police officer failed to record the traffic stop of Roberts because the officer's vehicle was not equipped with a video camera. *Id.* at 336, 713 S.E.2d at 280. Prior to the trial in municipal court, Roberts moved to dismiss the charge based on the officer's failure to videotape the entire arrest pursuant to section 56–5–2953. *Id.* at 337, 713 S.E.2d at 280. In opposing that argument, the Town of Mount Pleasant (the Town) relied on subsection (G) of section 56–5–2953 for the proposition that the videotaping requirement only takes effect once the law enforcement vehicle is equipped with a videotaping device. *Id.* at 337–38, 713 S.E.2d at 280–81. As the vehicle had not been equipped with such a device, the Town argued the statute had not taken effect.[7] *Id.* In support of her motion to dismiss, Roberts called several law enforcement officers from Charleston, Berkeley, and Dorchester counties in an attempt to establish that Mount Pleasant

7. Our supreme court noted "this argument would be valid but for the Town's obvious intentional efforts to avoid complying with section 56–5–2953." *Roberts*, 393 S.C. at 338, 713 S.E.2d at 281.

had fewer video cameras than these municipalities despite a higher number of DUI arrests. *Id.* at 338, 713 S.E.2d at 281. Roberts argued the Town had willfully avoided compliance with 56–5–2953 as it had not requested additional cameras from DPS in response to increasing DUI arrests.[8] *Id.* Additionally, Roberts argued the Town was financially able to purchase additional video cameras but had chosen not to do so. *Id.*

At the conclusion of the pre-trial hearing, the municipal court denied Roberts's motion to dismiss. *Id.* at 339, 713 S.E.2d at 281. The municipal court concluded there was no requirement that Mount Pleasant obtain any video cameras, and noted that subsection (G) indicated the other provisions of section 56–5–2953 only take effect once a vehicle is equipped with a videotaping device. *Id.* Roberts was convicted of DUI and subsequently appealed her conviction to the circuit court. *Id.* The circuit court reversed Roberts's conviction, finding that to construe subsection (G) as proposed by the Town would permit law enforcement agencies to circumvent the statute by not requesting video cameras from DPS. *Id.* at 340, 713 S.E.2d at 282. The circuit court also concluded that none of the exceptions in subsection (B) of 56–5–2953 were satisfied. *Id.*

In affirming the circuit court, our supreme court held that the Town's failure to equip its patrol vehicles with video cameras, despite its "priority" ranking, "defeat[ed] the intent of the Legislature and violated the statutorily-created obligation to videotape DUI arrests." *Id.* at 347, 713 S.E.2d at 285. The supreme court went on to say the Town should not be able to continually evade its duty by relying on subsection (G) of section 56–5–2953. *Id.* The court also pointed out that the Town failed to satisfy any of the statutory exceptions to the videotaping requirement. *Id.* Furthermore, the Town's

---

8. From our reading of *Roberts,* the Town did not argue that the difficulty in receiving video cameras from DPS contributed to their noncompliance. Unlike this case, it does not appear that the Town presented evidence that law enforcement agencies were unable to request additional cameras until 2009. Instead, "[t]he Town countered Roberts's arguments by claiming that DPS was solely responsible for providing the video cameras and, thus, the Town did not have a duty to request or purchase additional cameras in order to comply with the statute." *Roberts,* 393 S.C. at 338–339, 713 S.E.2d at 281.

failure to request additional video cameras from DPS did not constitute a "valid reason for the failure to produce the videotape based upon the totality of the circumstances." *Id.* at 348, 713 S.E.2d at 286 (citing § 56–5–2953(B)). In reaching this decision, the supreme court noted that its holding was dependent on the specific facts of *Roberts*, and it could envision other circumstances in which a law enforcement agency could establish a "valid reason" for noncompliance:

> Our decision should in no way be construed as eradicating subsection (G) of section 56–5–2953. Instead, we emphasize that subsection (G) is still viable and must be read in conjunction with subsection (B) as these exceptions, under the appropriate factual circumstances, could operate to excuse a law enforcement agency's noncompliance due to the failure to equip a patrol vehicle with a video camera. For example, we can conceive of a scenario where a law enforcement agency establishes a 'valid reason' for failing to create a video of the incident site by offering documentation that, despite concerted efforts to request video cameras, it has not been supplied with the cameras from DPS.

*Id.* at 349, 713 S.E.2d at 286–87.

██ In the present case, we find the GPD established a valid reason for its failure to equip a patrol vehicle with a video recording system. Lieutenant Browning's testimony outlined the GPD's extensive efforts to obtain video recording systems for its law enforcement vehicles. The GPD requested camera systems from DPS in both 2002 and 2009, which were the only opportunities to request camera systems from DPS.[9]

---

9. Johnson also argues the number of camera systems requested by the GPD was insufficient in comparison to the number of requests made by police departments in "other highly populated cities." Specifically, Johnson points out that in 2009 the Charleston Police Department requested 200 camera systems and the Columbia Police Department requested 193 camera systems. However, this argument lacks merit because the number of DUI arrests, rather than population, governs priority for camera systems. In 2009, the Charleston and Columbia police departments had first and ninth priority, respectively, while the GPD had twenty-first priority. According to a DPS spreadsheet, the number of camera systems requested by the GPD was comparable to the number of requests by agencies with similar "priority" rankings. More specifically, the Richland County and Anderson County sheriff's departments had 2009 priority rankings of nineteenth and twentieth, respectively. Accordingly, the spreadsheet reveals that Richland Coun-

Unlike the police department in *Roberts*, the GPD had already begun a process of expending its own funds to purchase camera systems before Johnson's arrest. This process included establishing a committee to research camera systems and necessitated the time-consuming task of attempting to secure extra funding from state and local government. These efforts do not constitute an attempt to evade the requirements of section 56-5-2953; instead, we agree with the circuit court that these efforts signify an attempt to comply with the statute with the limited funds and opportunities available. As we find the GPD did not seek to evade compliance with 56-5-2953 through reliance on subsection (G), subsection (G) still applies. Therefore, the video recording requirements of subsection 56-5-2953(A) had not taken effect because the vehicle had yet to be equipped with video recording equipment. Additionally, had the requirements taken effect, we find these facts constitute a "valid reason" under a totality of the circumstances analysis, which would satisfy an exception under section 56-5-2953(B). *See Roberts*, 393 S.C. at 349, 713 S.E.2d at 286-87 ("We can conceive of a scenario where a law enforcement agency establishes a 'valid reason' for failing to create a video of the incident site by offering documentation that, despite concerted efforts to request video cameras, it has not been supplied with the cameras from DPS.").

## CONCLUSION

We hold the circuit court properly denied Johnson's motion to dismiss his charge for DUI. Unlike the police department in *Roberts*, the GPD did not seek to evade its duties in equipping law enforcement vehicles with video recording systems. Thus, under subsection (G) of 56-5-2953, the video recording requirements of subsection 56-5-2953(A) had not taken effect because a video camera had not been installed in the vehicle. Accordingly, the circuit court's decision is

**AFFIRMED.**

SHORT and WILLIAMS, JJ., concur.

---

ty requested ten camera systems in 2009, Anderson County requested fifteen camera systems, and the GPD requested twenty camera systems. Similarly, in 2002, the GPD had twentieth priority and requested more camera systems than the two agencies with eighteenth and nineteenth priority.