768 S.E.2d 71

The STATE, Appellant,

v.

Bailey TAYLOR, Respondent.

Appellate Case No. 2012–213018.

No. 5285.

Court of Appeals of South Carolina.

Heard Nov. 3, 2014.

Decided Dec. 23, 2014.

Attorney General Alan McCrory Wilson, and Assistant Attorney General William M. Blitch, Jr., for Appellant, both of Columbia.

Travis Ashley Newton, of The Newton Law Firm, P.A., of Anderson, for Respondent.

KONDUROS, J.

The magistrate court dismissed Bailey Taylor's charge for driving under the influence (DUI) because the required video recording of the incident site omitted Taylor from view for a period of time while the arresting officer repositioned his vehicle. The State appealed the circuit court's upholding of this dismissal. We reverse and remand.

## FACTS

On July 22, 2011, South Carolina Highway Patrol Trooper E.S. Tolley charged Taylor with driving with unlawful alcohol concentration under section 56–5–2933 of the South Carolina Code (Supp.2013).[1] During the stop, as Tolley repositioned his patrol vehicle, the camera omitted Taylor from view for a period of time.

Taylor moved pretrial to dismiss the charge against her, arguing Tolley failed to comply with section 56–5–2953 of the South Carolina Code (Supp.2013)[2] because the video omitted her from view for several seconds and Tolley failed to submit an affidavit explaining why her actions were not recorded during that time. The State argued the officer was not required to capture all of the defendant's actions to satisfy the statute's requirements. The magistrate court dismissed Taylor's charge for driving with unlawful alcohol concentration. The magistrate court concluded the statute required the arresting officer to record all of Taylor's conduct at the incident site and required the submission of an affidavit explaining why all of her conduct was not video recorded. The magistrate court concluded dismissal of Taylor's charge was an appropriate remedy when the State did not comply with the statute because Taylor's actions while outside the view of the video constituted "conduct," and Tolley failed to submit an affidavit. The magistrate's return does not contain any findings of fact other than stating Taylor's actions are omitted from view on the video for a period of time.[3]

The State appealed to the circuit court, arguing the magistrate court erred because the video recording captured all of the requirements of section 56–5–2953, even though the video omitted Taylor's actions at the incident site for several seconds. The State asserted the statute only specifically requires

---

1. The statute became effective February 10, 2009.

2. This statute also became effective February 10, 2009.

3. The magistrate's return is unclear whether the magistrate court reviewed the video. The return states "both parties agree that there is a gap on the video recording where the defendant is not on camera and her conduct is not being recorded," but does not state that the court watched the video. Additionally, neither the State nor Taylor offered any items into evidence before the magistrate court.

certain aspects of the defendant's conduct at the incident site be recorded and the word "conduct" in the statute is not meant to encompass every action of the defendant. The State also contended its production of a video recording that met the requirements of the statute rendered the submission of an affidavit unnecessary. The circuit court affirmed the magistrate court, concluding the omission of Taylor's actions from view for several seconds violated the statute and Tolley failed to submit an affidavit but, finding the video began upon activation of blue lights, continuously recorded the entire time, captured all of the field sobriety tests administered, included Taylor's arrest, and showed Tolley advising Taylor of her *Miranda*[4] rights.[5] This appeal followed.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate court is bound by the trial court's factual findings unless they are clearly erroneous. *Id.*

"In criminal appeals from magistrate ... court, the circuit court does not conduct a *de novo* review, but instead reviews for preserved error raised to it by appropriate exception." *State v. Henderson*, 347 S.C. 455, 457, 556 S.E.2d 691, 692 (Ct.App.2001); S.C.Code Ann. § 18–3–70 (Supp.2013) ("The appeal [from a magistrate in a criminal case] must be heard by the Court of Common Pleas upon the grounds of exceptions made and upon the papers required under this chapter, without the examination of witnesses in that court. And the court may either confirm the sentence appealed from, reverse or modify it, or grant a new trial, as to the court may seem meet and conformable to law."). This court will review

---

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. It is also unclear whether the circuit court reviewed the video or made its findings based on statements by counsel during the hearing. Again, neither the State nor Taylor offered any items into evidence before the magistrate court. Nonetheless, Taylor has not challenged that the other requirements of the statute were met. Taylor only argued her omission from the camera's view for a period of time violated the statute because her conduct was not recorded.

the decision of the magistrate court for errors of law only. *City of Rock Hill v. Suchenski,* 374 S.C. 12, 15, 646 S.E.2d 879, 880 (2007); *Henderson,* 347 S.C. at 457, 556 S.E.2d at 692.

In criminal appeals from the magistrate court, the circuit court is bound by the magistrate court's findings of fact if any evidence in the record reasonably supports them. *See City of Greer v. Humble,* 402 S.C. 609, 613, 742 S.E.2d 15, 17 (Ct.App.2013). "Moreover, [q]uestions of statutory interpretation are questions of law, which are subject to *de novo* review and which we are free to decide without any deference to the court below." *Id.* (alteration by court).

## LAW/ANALYSIS

The State contends the magistrate court and circuit court erred in dismissing the DUI charge under section 56–5–2953(A) of the South Carolina Code (Supp.2013) when the video recording briefly omitted Taylor from its view at the incident site but otherwise complied with the statute's requirements and when Tolley did not submit an affidavit explaining Taylor's omission from view. We agree.

"The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature." *State v. Elwell,* 403 S.C. 606, 612, 743 S.E.2d 802, 806 (2013) (internal quotation marks omitted). "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will." *Id.* "Therefore, [i]f a statute's language is plain, unambiguous, and conveys a clear meaning[,] the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Id.* (internal quotation marks omitted); *see also State v. Pittman,* 373 S.C. 527, 561, 647 S.E.2d 144, 161 (2007) ("All rules of statutory construction are subservient to the maxim that legislative intent must prevail if it can be reasonably discovered in the language used."). "However, penal statutes will be strictly construed against the [S]tate." *Elwell,* 403 S.C. at 612, 743 S.E.2d at 806.

"If the statute is ambiguous, however, courts must construe the terms of the statute." *Town of Mt. Pleasant v. Roberts,* 393 S.C. 332, 342, 713 S.E.2d 278, 283 (2011). "A

statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers." *State v. Sweat,* 379 S.C. 367, 376, 665 S.E.2d 645, 650 (Ct.App.2008), *aff'd as modified,* 386 S.C. 339, 688 S.E.2d 569 (2010). "In interpreting a statute, the language of the statute must be read in a sense that harmonizes with its subject matter and accords with its general purpose." *Town of Mt. Pleasant,* 393 S.C. at 342, 713 S.E.2d at 283. "Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law." *Id.* (internal quotation marks omitted). "Courts will reject a statutory interpretation that would lead to a result so plainly absurd that it could not have been intended by the Legislature or would defeat the plain legislative intention." *Id.* at 342–43, 713 S.E.2d at 283.

A person who commits a DUI offense "must have his conduct at the incident site . . . video recorded." § 56–5–2953(A). "The video recording at the incident site must: (i) not begin later than the activation of the officer's blue lights; (ii) include any field sobriety tests administered; and (iii) include the arrest of a person for a violation of . . . [s]ection 56–5–2933 [6] [of the South Carolina Code (Supp.2013) ], . . . and show the person being advised of his [*Miranda* ] rights." § 56–5–2953(A)(1)(a)(i–iii). A violation of this section may result in dismissal of the DUI charges. S.C.Code Ann. § 56–5–2953(B) (Supp.2013); *see also City of Rock Hill v. Suchenski,* 374 S.C. 12, 17, 646 S.E.2d 879, 881 (2007) (holding dismissal of DUI charge is an appropriate remedy if the officer fails to produce a satisfactory video recording unless an exception applies).

In *Suchenski,* our supreme court affirmed the reversal of the defendant's DUI conviction when the video stopped recording before the officer administered a third field sobriety test and before the defendant was arrested. 374 S.C. at 14, 646 S.E.2d at 879. The City conceded the officer did not comply with the video recording requirement but asserted it was excused under section 56–5–2953(B). *Id.* at 14–15, 646 S.E.2d at 879–880. The court found the applicability of the exceptions unpreserved because the City failed to seek a post-

---

6. Tolley charged Taylor with violating section 56–5–2933.

judgment ruling after the circuit court did not address section 56-5-2953(B) in its order. *Id.* at 15–16, 646 S.E.2d at 880. In applying the prior version of the statute, which required video recording to begin upon activation of blue lights and conclude after the defendant's arrest but did not specifically require video recording of field sobriety tests, the court held the City's failure to comply with the statute required dismissal of the charges. *Id.* at 14, 17, 646 S.E.2d at 879, 881; *see also* S.C.Code Ann. § 56-5-2953(A)(1) (2006).

In *Murphy v. State,* which the State asserts is controlling in this case, this court affirmed the defendant's DUI conviction under the prior version of the statute even though she conducted the horizontal gaze nystagmus (HGN) [7] test with her back to the vehicle camera and even though the video only recorded the defendant from the knees up as she performed the walk and turn test [8], occasionally only displaying half of her body. 392 S.C. 626, 628–29, 709 S.E.2d 685, 686–87 (Ct.App.2011). The defendant argued "the videotape of the incident [s]ite d[id] not comply with the statute because it fail[ed] to 'record most of the field sobriety tests.' " *Id.* at 631, 709 S.E.2d at 688. The court found "the plain language of the statute does not require that the recording capture a continuous full view of the accused, or capture *all* field sobriety tests. Rather, provided all other requirements are met, the video

---

7. "Nystagmus is described as an involuntary jerking of the eyeball, a condition that may be aggravated by the effect of chemical depressants on the central nervous system." *State v. Sullivan,* 310 S.C. 311, 315 n. 2, 426 S.E.2d 766, 769 n. 2 (1993). "The HGN test consists of the driver being asked to cover one eye and focus the other on an object held at the driver's eye level by the officer. As the officer moves the object gradually out of the driver's field of vision toward his ear, he watches the driver's eyeballs to detect involuntary jerking." *Id.*

8. "In the walk and turn test, the subject is directed to take nine steps, heel-to-toe, along a straight line. After taking the steps, the suspect must turn on one foot and return in the same manner in the opposite direction. The examiner looks for eight indicators of impairment: if the suspect cannot keep balance while listening to the instructions, begins before the instructions are finished, stops while walking to regain balance, does not touch heel-to-toe, steps off the line, uses arms to balance, makes an improper turn, or takes an incorrect number of steps." *Appendix A: Standardized Field Sobriety Testing,* National Highway Traffic Safety Administration, at http://www.nhtsa.gov/people/injury/alcohol/sfst/appendix_a.htm (last visited Oct. 24, 2014).

need only record the accused's conduct." *Id.* at 632, 709 S.E.2d at 688. Further, the court concluded "an unbroken recording of the tests is not necessary to capture conduct." *Id.* However, unlike the current statute, the statute applicable in *Murphy* did not include the explicit requirement that it "include any field sobriety tests administered." [9] § 56–5–2953(A)(1)(a)(ii). Instead, the statute only required the video recording to "include the person being advised of his *Miranda* rights before any field sobriety tests are administered, if the tests are administered." § 56–5–2953(A)(1)(b) (2006).

In *State v. Gordon,* the court of appeals affirmed the circuit court's determination that the statute required the HGN field sobriety test to be on video and specifically for the HGN test, the defendant's head must be on video. 408 S.C. 536, 543, 759 S.E.2d 755, 758 (Ct.App.2014), *cert. granted.* In *Gordon,* the defendant moved to dismiss the charge in magistrate court, arguing the State violated the statute because the video recording did not show his head during the administration of the HGN test. *Id.* at 539, 759 S.E.2d at 756. The magistrate court denied the motion under *Murphy,* finding the statute only required the defendant's conduct to be recorded, and the defendant was convicted in a jury trial. *Id.* The circuit court reversed his conviction on appeal, finding the defendant's head was not on video, which violated the statute. *Id.* at 539–40, 759 S.E.2d at 756–57. This court agreed the HGN test, specifically the defendant's head during the HGN test, must be recorded to comply with the statute. *Id.* at 543–44, 759 S.E.2d at 758–59. The court distinguished *Murphy* because, unlike the amended statute applicable in *Gordon* and in the present case, it was based on the prior statute, which did not specifically require video of the field sobriety tests. *Id.* at 543, 759 S.E.2d at 758; *see also* § 56–5–2953(A)(1)(a)(ii) (Supp. 2013); § 56–5–2953(A)(1)(b) (2006). However, the court vacated the circuit court's factual finding that the defendant's head could not be seen on video because the circuit court may not make factual findings when sitting in an appellate capacity. *Gordon,* 408 S.C. at 543, 759 S.E.2d at 759. This court

---

**9.** Moreover, the *Murphy* court noted the legislature's amendment to the statute in 2009 bolstered its conclusion the previous statute was not violated when the video did not capture the defendant's performance on all of the field sobriety tests administered. 392 S.C. at 632 n. 4, 709 S.E.2d 685 at 688 n. 4.

then remanded to the magistrate court to determine whether the defendant's head was on the video recording because the magistrate court had never made any findings due to its misconstruction of the statute. *Id.* at 543–44, 759 S.E.2d at 759.

Dismissal of a DUI "charge is an appropriate remedy provided by section 56–5–2953 where a violation of subsection (A) is not mitigated by subsection (B) exceptions." *Suchenski,* 374 S.C. at 17, 646 S.E.2d at 881. "[T]he Legislature clearly intended for a *per se* dismissal in the event a law enforcement agency violates the mandatory provisions of section 56–5–2953." *Town of Mt. Pleasant,* 393 S.C. at 348, 713 S.E.2d at 286. "By requiring a law enforcement agency to videotape a DUI arrest, the Legislature clearly intended strict compliance with the provisions of section 56–5–2953 and, in turn, promulgated a severe sanction for noncompliance." *Id.* at 349, 713 S.E.2d at 286.

However, noncompliance with the recording requirement is excusable and is not alone a ground for dismissal (1) if the arresting officer submits a sworn affidavit certifying the video equipment was inoperable and stating which reasonable efforts were made to maintain it; (2) if the arresting officer submits a sworn affidavit that it was physically impossible to produce the videotape because either (a) the defendant needed emergency medical treatment or (b) exigent circumstances existed; (3) when an arrest is made and the camera has not been activated if video recording begins and conforms with the requirements as soon as practicable in circumstances including, but not limited to, road blocks, traffic accident investigations, and citizens' arrests; or (4) for any other valid reason for the failure to produce the video tape based upon the totality of the circumstances. § 56–5–2953(B).

Both the circuit court and the magistrate court committed errors of law by holding the statute required dismissal unless the video recorded all of Taylor's actions. The statute's language is plain, unambiguous, and conveys a clear meaning, and consequently, the rules of statutory interpretation are unnecessary. Furthermore, the circuit court erred in making factual findings because it was sitting in an appellate capacity. *Rogers v. State,* 358 S.C. 266, 270, 594 S.E.2d 278, 280 (Ct.App. 2004).

*Suchenski, Murphy,* and *Gordon* demonstrate the plain language of the statute does not require the video to encompass every action of the defendant, but requires video of each event listed in the statute. Significantly, in each of these cases, the propriety of dismissal of the charges depended on whether the officer complied with the mandatory provisions of the statute. In *Suchenski,* although the court did not discuss the nature of the City's violation of the statute because the City conceded its noncompliance, the video stopped recording *before* the defendant was arrested. 374 S.C. at 14–15, 646 S.E.2d at 879–80; *see also* § 56–5–2953(A)(1)(a) (2006) (requiring video to "conclude *after* the arrest of the person for a violation of" a DUI offense (emphasis added)). In *Murphy,* the court found the officer complied with the statute even though the camera only recorded portions of the defendant's body during the sobriety tests because the prior statute did not specifically require video of sobriety tests. 392 S.C. at 628, 631–32, 709 S.E.2d at 686, 688. Additionally, the court noted the defendant did not allege the video did not record the officer giving *Miranda* warnings, which was required by the statute. *Id.* at 631, 709 S.E.2d at 688. Finally, in *Gordon,* after affirming the circuit court's determination that the statute required video recording of the HGN sobriety test, this court remanded to the magistrate court to determine whether the video captured the defendant's head during administration of the HGN test. 408 S.C. at 543–44, 759 S.E.2d at 758–59. This court noted the statutory provision requiring video recording of field sobriety tests administered is pointless "if the actual tests cannot be seen on the recording." *Id.* at 543, 759 S.E.2d at 758; *see also State v. Henkel,* 404 S.C. 626, 632, 746 S.E.2d 347, 351 (Ct.App.2013) (*cert. granted*) (finding trial court erred in not dismissing the charge when officer failed to videotape the issuing of *Miranda* warnings and no exception applied).

The purpose of the video requirement in the statute "is to create direct evidence of a DUI arrest." *Town of Mt. Pleasant,* 393 S.C. at 347, 713 S.E.2d at 285. In enacting the provision, the legislature indicated this purpose and intent by specifically requiring the video to "include any field sobriety tests administered," as they determine whether a driver is impaired and therefore create direct evidence of the DUI

arrest. § 56–5–2953(A)(1)(a)(ii). In addition, unlike requiring the video to encompass every action of the defendant, requiring video recording of the person's arrest and of the officer issuing *Miranda* warnings serves to protect important rights of the defendant. However, this does not mean the legislature intended only those events enumerated in the statute to be recorded. The plain language of the statute demonstrates the legislature intended video recording of the majority of an officer's encounter with a potential DUI suspect. Nonetheless, interpreting the statute to require dismissal of the charges when the defendant is off camera for a short period of time and the gap does not occur during any of those events that either create direct evidence of a DUI or serve important rights of the defendant would result in an absurdity that could not possibly have been intended by the legislature. Indeed, interpreting the statute in that way would require dismissal of a DUI charge when a suspect stumbles out of view of the camera or when the officer is placing a suspect into his vehicle. Accordingly, section 56–5–2953 does not require dismissal of a DUI charge when the video recording of the incident briefly omits the suspect but that omission does not occur during any of those events that either create direct evidence of a DUI or serve important rights of the defendant.

 Because the statute was not violated in this situation, submitting an affidavit was unnecessary. Moreover, affidavits are required only when the camera was inoperable or it was physically impossible to record because the defendant required emergency medical treatment or exigent circumstances existed. § 56–5–2953(B). The record contains no evidence those situations were present here. As a result, the State did not need to submit an affidavit.

Although the video omitted Taylor from its view during the repositioning of Tolley's patrol vehicle, none of the field sobriety tests administered and none of the other statutory requirements occurred while she was out of the camera's view.

Because both the magistrate court and circuit court erred in interpreting the statute to require dismissal here, we reverse and remand to the magistrate court for trial.

**REVERSED AND REMANDED.**

HUFF and SHORT, JJ., concur.